UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAURENTIO HOWARD,<br>as father and next friend of D.H.,<br>a minor, | )<br>)<br>)<br>) |
|                 Plaintiff, | )<br>) |
| vs. | )<br>) |
| CITY OF CHICAGO,<br>JOHNNIE PIERRE,<br>SHERRY TRIPP,<br>CHICAGO BOARD OF EDUCATION, | )<br>)<br>)<br>)<br>) |
|                 Defendants. ) | JURY TRIAL DEMANDED |

## COMPLAINT

Laurentio Howard, as father and next friend of D.H., a minor, by and through his attorneys, Andrew M. Stroth, Carlton Odim, and Amanda S. Yarusso of Action Injury Law Group LLC, and Antonio Romanucci of Romanucci & Blandin, complains of Defendants, City of Chicago, Johnnie Pierre, Sherry Tripp, and Chicago Board of Education, as follows:

### Introduction

1. This is a civil rights action, brought on behalf of a minor, who while in attendance at a Chicago public school, was, without justification, physically abused and traumatized by two Chicago police officers.

2. On January 29, 2019, D.H., a 16-year-old Black female student, was punched, tasered, stepped on, struck and otherwise beaten by Defendants Pierre and Tripp, Chicago police officers, who were inappropriately and without proper recruitment, training, direction, or supervision, assigned to police minors at Marshall High School in Chicago, Illinois.

3. D.H. was also charged with misdemeanor and felony crimes as a result of Defendant-Officers Pierre and Tripp's interaction with her; these charges were subsequently dismissed.

4. The Chicago Police Department (CPD) and Chicago Public Schools (CPS) have been assigning Chicago police officers and other security officers at Chicago Public Schools for decades without a legal agreement between the two agencies, and without following already existing, standard best practices for law enforcement personnel in school.

5. The City of Chicago's lack of directives, oversight, and standards pertaining to its police officers in its schools has resulted in the violation of students' civil rights and unnecessarily involved students in the criminal justice system.

6. The Defendant-Officers' use of force, arrest and criminal charging of D.H. was a direct result of the City of Chicago's failure to implement best practices for police and security officers in schools, practices that should be designed to ensure the safety of Chicago's children in a manner that avoids criminalizing juvenile behavior and violating their civil rights.

## Jurisdiction and Venue

7. The Jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983 et seq.; the Judicial Code, §§ 1331 and 1343(a); and the Constitution of the United States. Venue is proper in this District under 28 U.S.C. § 1391(b). The parties reside, or, at the time the events took place, resided in this judicial district, and the events giving rise to Plaintiff's claims also occurred in this judicial district.

## Parties

8. Laurentio Howard is the father of minor, D.H.

9. D.H. is sixteen years old and resides with her father Laurentio Howard, in Chicago, Illinois.

2

10. During the 2018-2019 school year, including on January 29, 2019, D.H. attended Marshall High School, in Chicago, Illinois.

11. Marshall High School is part of the Chicago Public School system administered by the Chicago Board of Education. Marshall High School staff are employees and agents of Chicago Public Schools and the Chicago Board of Education.

12. Defendants Johnnie Pierre and Sherry Tripp were Chicago police officers assigned to Marshall High School.

13. Defendants Pierre and Tripp were, at all times relevant to the allegations made in this complaint, duly appointed police officers employed by the City of Chicago, Illinois, acting within the scope of their employment with the City of Chicago and under color of state law. They are sued in their individual capacities.

14. Defendant City of Chicago is a municipality, duly incorporated under the laws of the State of Illinois, and is the employer and principal of Defendants Pierre and Tripp. The City is responsible for the policies, practices and customs related to its maintenance of a police force.

15. Defendant Chicago Board of Education is a publicly funded agency, duly incorporated under the laws of the State of Illinois and is responsible for the governance, organizational and financial oversight of Chicago Public Schools (CPS), the third largest school district in the United States of America.

**Facts**

16. On January 29, 2019, D.H. was attending school at Marshall High School in Chicago, Illinois.

17. During the morning of January 29, 2019, D.H. was directed to leave school because of a student conduct issue, specifically having her cell phone out in class.

18. The Assistant Principal contacted Laurentio Howard to tell him to come pick up D.H. after she had completed her final exams.

19. A school security officer then began to attempt to escort D.H. out of the school.

20. D.H. asked to speak to the Assistant Principal regarding completing her final exams before leaving.

21. The security officer insisted D.H. leave.

22. The security officer called Laurentio Howard and insisted that he come immediately to pick up D.H.

23. Laurentio Howard proceeded to Marshall High School.

24. The security officer maintained a physical presence, following D.H., but did not use any physical force with D.H.

25. Defendant-Officers Pierre and Tripp then approached D.H. and began to attempt to force her to leave the school.

26. Laurentio Howard was present when Defendant-Officers Pierre and Trip began escorting D.H. and for the events that followed.

27. While escorting D.H., and while walking on or near a stairway in the school, one of the Defendant-Officers, without cause or provocation, pushed D.H.

28. As a result of being pushed, D.H. grabbed onto one of the Defendant-Officers' vest to keep from falling down the stairs.

29. D.H. and the Defendant-Officers lost their balance and fell down the stairs.

30. After reaching the bottom of the stairs, the Defendant-Officers proceeded to use force on D.H., including punching D.H., deploying a taser on D.H. kneeling on D.H., and standing/stepping on D.H.

31. During the Defendant-Officers' use of force, D.H. was prone on the ground and was surrounded by the officers.

32. During the Defendant-Officers' use of force, Laurentio Howard was present and observed the incident.

33. At no time during their contact with D.H. did the Defendant-Officers request or allow Laurentio Howard to assist or intervene in escorting his daughter, D.H., from school.

34. At no time during their contact with D.H. did the Defendant-Officers request or allow Laurentio Howard to assist or intervene in calming his daughter, D.H., or otherwise de-escalating the situation.

35. The Defendant-Officers insisted that Laurentio Howard stay back from his daughter, D.H., while they proceeded to use force on D.H., including striking her, deploying a taser on her, and standing/stepping on her.

36. At no time during their contact with D.H. did the Defendant-Officers seek assistance or involvement from any Marshall administration, staff members, or other security officers in escorting D.H.

37. At no time during their contact with D.H. did the Defendant-Officers attempt to deescalate the interaction.

38. While the Defendant-Officers were using force on D.H., D.H., who suffers from asthma, was having trouble breathing.

39. As a result of the incident and the Defendant-Officers' use of force, D.H. was injured and was brought to a hospital for treatment.

40. As a result of the incident, D.H. was charged with misdemeanor and felony charges brought by the Defendant-Officers.

41. Due to the pending criminal charges, D.H. was confined to her home on an electronic monitoring device and was not allowed to attend school or enjoy other daily activities and freedom of movement.

42. The charges were dismissed in the interests of justice by the state's attorney on February 6, 2019.

43. As a result of the incident, D.H. had to leave Marshall High School and her community of friends and supporters, and enroll in a different CPS high school.

44. Throughout her enrollment at Marshall High School, including on January 29, 2019, D.H. had an Individual Education Program (IEP) based on an emotional disability.

45. The IEP includes a Behavior Intervention Plan (BIP).

46. It is the responsibility of all school staff that interact with D.H. to implement the BIP for D.H.

47. The IEP/BIP for D.H. specified that D.H. has difficulty regulating her emotions and is defensive when confronted.

48. The IEP/BIP for D.H. noted that removal from the classroom, engagement of police or security, and suspensions have not been successful in addressing D.H. behavioral issues and emotional disability.

49. Further, the IEP/BIP noted that removal from school and suspensions are negatively affecting D.H.'s academic performance.

50. The IEP/BIP specified that school staff shall use the CPS student code of conduct to address D.H.'s emotional disability and behavioral issues.

51. Marshall High School staff did not properly follow the student code of conduct on January 29, 2019, to address the underlying behavioral issue.

52. Marshall High School staff did not properly follow D.H.'s IEP/BIP on January 29, 2019, to address the underlying behavioral issue.

53. Defendant-Officers Pierre and Tripp did not properly follow the student code of conduct on January 29, 2019, to address the underlying behavioral issue.

54. Defendant-Officers Pierre and Tripp did not properly follow D.H.'s IEP/BIP on January 29, 2019, to address the underlying behavioral issue.

55. The Defendant-Officers unnecessarily intervened and escalated a student behavioral issue when they approached D.H. and forcibly attempted to remove her from school.

56. The Defendant-Officers unreasonably and excessively seized and used force on D.H. to address a student behavioral issue.

57. The Defendant-Officers' conduct escalated a student behavioral issue into an incident that resulted in felony charges against D.H.

58. As a result of the Defendants' conduct as described above, D.H. has suffered injuries in the form of pain and suffering, loss of freedom, and emotional trauma and distress.

**Count I**
**42 U.S.C. § 1983 Claim for Unconstitutional Seizure**

59. Plaintiff repeats and realleges the preceding paragraphs of this Complaint, as if they were fully set out in this Count.

60. The actions of Defendant Officers Pierre and Tripp, in physically seizing, escorting and using any force on D.H., over a student behavioral issue, violated D.H.'s rights under the Fourth Amendment to the United States Constitution to be secure in her person against unreasonable seizure, and caused the injuries alleged in this complaint.

61. The actions of the Defendant Officers, as alleged in this Complaint, were the direct

and proximate cause of the constitutional violations set forth above and of D.H.'s injuries.

WHEREFORE, pursuant to 42 U.S.C. §1983, Plaintiff demands compensatory and punitive damages against Defendant-Officers Pierre and Tripp, plus the costs of this action, attorneys' fees, and whatever additional relief this Court deems equitable and just.

**Count II**
**42 U.S.C. § 1983 Claim for Excessive Force**

62. Plaintiff repeats and realleges the preceding paragraphs of this Complaint, as if they were fully set out in this Count.

63. The actions of Defendant-Officers Pierre and Tripp, in pushing, punching, deploying a taser, stepping/standing on D.H., and otherwise using force on D.H., violated D.H.'s rights under the Fourth Amendment to the United States Constitution to be secure in her person against unreasonable seizure in the form of excessive force, and caused the injuries alleged in this Complaint.

64. The actions of the Defendant Officers, as alleged in this Complaint, were the direct and proximate cause of the constitutional violations set forth above and of D.H.'s injuries.

WHEREFORE, pursuant to 42 U.S.C. §1983, Plaintiff demands compensatory and punitive damages against Defendant-Officers Pierre and Tripp, plus the costs of this action, attorneys' fees, and whatever additional relief this Court deems equitable and just.

**Count III**
**42 U.S.C. § 1983 *Monell* Policy Claim Against Defendants City of Chicago and the Chicago Board of Education**

65. Plaintiff repeats and realleges the preceding paragraphs of this Complaint, as if they were fully set out in this Count.

66. The City of Chicago, through the Chicago Police Department (CPD), and the Chicago

Board of Education, through the Chicago Public Schools (CPS), employs police officers and security officers assigned in various schools throughout Chicago.

67. These police officers and security officers interact with Chicago's children on a daily basis in communities all over the City of Chicago.

68. Police officers and security officers dealing with youth on a regular basis, such as in schools, require specialized training.

69. Numerous examples and guides for best practices for law enforcement presence in schools, nationwide, are readily available.

70. Despite this, CPD does not have an intergovernmental agreement with CPS that governs the recruitment, selection, placement, training, roles and responsibilities of Chicago police officers in Chicago schools.

71. CPD lacks any formal recruitment, selection and placement processes and standards to ensure that police officers assigned to schools are proper candidates for these unique positions.

72. Furthermore, CPD does not provide specific training for police officers assigned to schools on unique aspects that are essential to their role, most importantly alternatives to arresting students.

73. In addition, such training should include topics specifically relevant to officers interacting with young students, such as:

    a. Childhood and adolescent development;

    b. Age-appropriate response to student conduct;

    c. Disability and special education issues;

    d. Conflict resolution and de-escalation techniques;

    e. Responses to trauma;

    f. Restorative justice techniques; and

    g. Interacting with specific student groups, such as ESL learners and LGBTQI students.

74. These above deficiencies have been found to exist by the City of Chicago's Office of Inspector General and acknowledged by CPD as reported in the OIG's <u>Review of the Chicago Police Department's Management of School Resource Officers</u> (OIG Review), which can be found at https://igchicago.org/wp-content/uploads/2018/09/CPD-Management-of-School-Resource-Officers-Review.pdf.

75. CPS's own Student Code of Conduct dictates that school administrators should only contact CPD in the event of criminal activity and emergencies and additionally provides a list of factors to consider before involving CPD in any matter. See (at p. 11-12): https://cps.edu/SiteCollectionDocuments/SCC_StudentCodeConduct_English.pdf

76. CPS teachers should never contact CPD directly to handle a student matter, but should instead refer the student to the school principal or administrator.

77. However, according to the OIG Review: "CPS last conducted training for all SROs [i.e. police officers] on its revised Student Code of Conduct in 2013." Furthermore, the Student Code of Conduct lacks any specific guidance for SROS on their roles and responsibilities.

78. As a result of the September 13, 2018, OIG Review, CPD and CPS were put on notice that: "[to] protect and serve students, it is vital that CPD make *immediate* changes to ensure the safe and productive engagement of SROs with students and their families."

79. The recently ordered Consent Decree, in order to correct these undisputed serious deficiencies, requires that officers assigned to work in CPS schools be appropriately vetted, trained, and guided by clear policy in order to cultivate relationships of mutual respect and

understanding, and foster a safe, supportive and positive learning environment for students. See (at ¶ 38): http://chicagopoliceconsentdecree.org/wp-content/uploads/2019/02/FINAL-CONSENT-DECREE-SIGNED-BY-JUDGE-DOW.pdf

80. Such specialized training must include: the use of de-escalation techniques, restorative approaches, community resources and alternative response options, youth development, crisis intervention, and disability and special education issues, among other things (at ¶ 42).

81. These deficiencies in CPD and CPS policies regarding recruitment, assignment, roles, duties, training, and guidelines for police officers in Chicago schools created an environment where CPD officers treat student conflicts and behavioral issues as violent, criminal situations, and thereby caused the individual Defendant-Officers' violation of D.H.'s rights.

82. Moreover, the failure to adhere to the minimal policies and standards already in place by CPS and CPD also caused the individual Defendant-Officers' violation of D.H.'s rights and the Marshall High School staff's conduct described in the Complaint.

WHEREFORE, pursuant to 42 U.S.C. §1983, Plaintiff demands substantial actual or compensatory damages against the City of Chicago and Chicago Board of Education, plus the costs of this action, attorney's fees and whatever additional relief this Court deems equitable and just.

### Count IV
### State Law Claim for Battery

83. Plaintiff repeats and realleges the preceding paragraphs of this Complaint, as if they were fully set out in this Count.

84. The Defendant-Officers, knowingly and without legal justification caused bodily

harm to D.H., when they pushed, punched, tasered and stepped on her, thereby constituting battery under Illinois law.

WHEREFORE, Plaintiff demands substantial actual or compensatory damages against Defendant Officers Pierre and Tripp, and, because Defendant Officers acted maliciously, wantonly, or oppressively, Plaintiff demands punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

### Count V
### State Law Claim for *Respondeat Superior* Against Defendants City of Chicago and Chicago Board of Education

85. Plaintiff repeats and realleges the preceding paragraphs of this Complaint, as if they were fully set out in this Count.

86. The Defendant-Officers and Marshall High School staff were, at all times material to the allegations made in this complaint, employees and agents of the City of Chicago and Chicago Board of Education, respectively, acting within the scope of their employment. Defendants City of Chicago and Chicago Board of Education are liable for the acts of the Defendant-Officers and Marshall High School staff that form the basis for Plaintiff's state law claims under the doctrine of *respondeat superior*.

WHEREFORE, Plaintiff demands judgment for compensatory damages, jointly and severally from Defendants, plus the costs of this action and whatever additional relief this Court deems equitable and just.

### Count VI
### 745 ILCS 10/9-102 Claim Against Defendants City of Chicago and Chicago Board of Education

87. Plaintiff repeats and realleges the preceding paragraphs of this Complaint, as if they were fully set out in this Count.

88. Defendants City of Chicago and Chicago Board of Education were the employers of the Defendant-Officers and Marshall High School staff, respectively, at all times relevant to the allegations contained in this complaint.

89. The Defendant-Officers and Marshall High School staff committed the acts alleged in this Complaint in the scope of their employment as employees of the Defendants City of Chicago and Chicago Board of Education, respectively, and Defendants City of Chicago and Chicago Board of Education are liable for their actions under 745 ILCS 10/9-102.

WHEREFORE, Plaintiff requests this Court order the Defendants City of Chicago and Chicago Board of Education to indemnify the individual Defendants for any compensatory damages and attorneys' fees and costs awarded to Plaintiff against said individual Defendants.

Respectfully submitted,

/s/Andrew Stroth

Andrew Stroth
Carlton Odim
Amanda Yarusso
ACTION INJURY LAW GROUP
191 N. Wacker Drive, Suite 2300
Chicago, Illinois 60606
(312) 578-9390

Antonio M. Romanucci
ROMANUCCI & BLANDIN, LLC
321 N. Clark Street, Suite 900
Chicago, Illinois 60654
(312) 458-1000